[Cite as *In re R.C.*, 2017-Ohio-5729.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|                        |   |                                    |
|------------------------|---|------------------------------------|
|                        | : | JUDGES:                            |
|                        | : |                                    |
|                        | : | Hon. Patricia A. Delaney, P.J.     |
|                        | : | Hon. William B. Hoffman, J.        |
| IN RE R.C.             | : | Hon. Earle E. Wise, Jr., J.        |
|                        | : |                                    |
|                        | : | Case No. 17CA03                    |
|                        | : |                                    |
|                        | : |                                    |
|                        | : |                                    |
|                        | : |                                    |
|                        | : | O P I N I O N                      |


CHARACTER OF PROCEEDING:          Appeal from the Richland County Court
                                  of Common Pleas, Juvenile Division
                                  Case No. 2016-DEP-00061



JUDGMENT:                         AFFIRMED



DATE OF JUDGMENT ENTRY:           June 30, 2017



APPEARANCES:

For Father-Appellant:                       For RCCS-Appellee:

JOHN A. BOYD                                SERENA M. COPPULA
1 Marion Ave., Suite 215                    Richland County Children Serv. Bd.
Mansfield, OH 44903                         731 Scholl Road
                                            Mansfield, OH 44907

*Delaney, P.J.*

{¶1} Father-Appellant appeals the December 23, 2016 judgment entry of the Richland County Court of Common Pleas, Juvenile Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Father-Appellant and Mother are the parents of R.C., born on December 17, 2012.

{¶3} In 2015, Mother and Father resided together in a homeless shelter for three months. In June 2015, Richland County Children Services ("RCCS") received a referral regarding the well-being of R.C. Mother and Father were residing with R.C. in the homeless shelter, but were also allegedly squatting with R.C. in another house. Around this time, Mother and Father took R.C. to live with Maternal Grandmother in Morrow County, Ohio. RCCS could not locate the family and took no further action based on the referral.

{¶4} RCCS investigated a second referral on September 1, 2015 concerning a report that Mother and Father were using drugs and R.C. was unsupervised at a home in Richland County, Ohio. A caseworker met with Mother and Father and did not observe physical evidence of the parents' drug use. The caseworker contacted Maternal Grandmother to pick up R.C. and conducted a visit of Maternal Grandmother's home. The caseworker found the home to be satisfactory.

{¶5} RCCS, while in the process of evaluating the need to file an action for custody of R.C., entered into a safety plan whereby R.C. would reside with Maternal Grandmother while Mother and Father would complete required drug and alcohol assessments, follow any recommendations from the assessments, participate in drug

testing, maintain employment, and maintain stable housing. Mother agreed to the safety plan, but Father did not consent. During safety plan checks at Maternal Grandmother's home, R.C. seemed happy and stable. There were children his age in the household. Maternal Grandmother made sure he was up to date on his immunizations. While R.C. resided with Maternal Grandmother, Father lived with Maternal Great-Grandfather at a different residence. Father visited with R.C. almost daily. Father obtained employment with Maternal Grandfather's place of employment. Father is currently living with Maternal Grandmother and R.C.

{¶6}   A caseworker with RCCS testified Father denied having a substance abuse problem on September 22, 2015, but on October 8, 2015, Father told the caseworker he had been using heroin and showed her the track marks on his arms. The caseworker believed Father was living with Maternal Grandmother in November 2015 and on November 8, 2015, Father admitted to smoking crack cocaine prior to November 2015. During a surprise visit to Maternal Grandmother's home on December 28, 2015, Father refused a drug test because he admitted to using marijuana.

{¶7}   In May 2016, Father and Maternal Grandmother told RCCS to leave them alone and not to come back. RCCS could not check on R.C.'s well-being.

{¶8}   Father was charged with felony possession of cocaine and placed in the Substance Abuse Treatment Court program. On July 25, 2016, August 1, 2016, August 15, 2016, and September 20, 2016, Father tested positive for cocaine. On July 28, 2016, Father tested positive for oxycodone and cocaine. Probation sanctioned Father for the positive drug screens and for running away from his probation officer on September 29, 2016. Father missed two of five mandated drug-counseling sessions.

{¶9}     On August 5, 2016, RCCS filed a complaint alleging R.C. was a dependent and neglected child as defined in R.C. 2151.04 and 2151.03. Additionally, the complaint requested the trial court grant a protective supervision order to RCCS. On October 18, 2016, RCCS amended its complaint to request an order granting temporary custody of R.C. to another relative with an order of protective supervision to RCCS. RCCS also filed a motion to produce R.C. for a safety and welfare check. The trial court granted the motion on October 19, 2016.

{¶10} An adjudicatory hearing was held before the magistrate on October 21, 2016. Mother agreed to a finding of dependency. At the time of the hearing, Mother was incarcerated at the Ohio State Reformatory for Women on a charge of heroin possession. The Guardian ad Litem testified at the hearing that she had very limited contact with R.C. She stated the contact she had with R.C. showed him to be happy with Maternal Grandmother. She recommended R.C. stay with Maternal Grandmother.

{¶11} On November 8, 2016, the magistrate recommended R.C. be found a dependent child pursuant to R.C. 2151.04(C). The magistrate found Mother and Father were struggling with substance abuse issues and required further treatment before R.C. could be safely returned to their care. The magistrate further determined Mother and Father could remove R.C. from his current and seemingly stable environment at any time, but because Father and Maternal Grandmother denied RCCS access to the home, RCCS could not be assured of the adequacy of R.C.'s care in the home. The magistrate ordered R.C. not be removed from Maternal Grandmother's home and transferred the matter to the Morrow County Court of Common Pleas.

{¶12} The trial court adopted the magistrate's decision on November 8, 2016. Father filed objections to the magistrate's decision. The trial court overruled Father's objections and reaffirmed its adoption of the magistrate's decision on December 23, 2016. It is from this judgment Father now appeals.

## ASSIGNMENT OF ERROR

{¶13} Father raises one Assignment of Error:

{¶14} "THE TRIAL COURT'S DECISION THAT R.C. IS A DEPENDENT CHILD AS DEFINED BY OHIO REVISED CODE (R.C.) 2151.04 IS CONTRARY TO LAW AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

## ANALYSIS

{¶15} Father contends in his sole Assignment of Error that the trial court's decision that R.C. is a dependent child is not supported by clear and convincing evidence. Father argues he has demonstrated proper parental care by voluntarily placing R.C. with Maternal Grandmother, a responsible relative.

{¶16} This Court stated in *In re Pierce,* 5th Dist. Muskingum No. CT2008–0019, 2008–Ohio–6716, that a trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence. *In re G. McC.*, 5th Dist. Stark Nos. 2013CA00103, 2013CA00106, 2013-Ohio-5310, ¶ 28 citing R.C. 2151.35. Clear and convincing evidence is that which produces "in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In Re: Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). When this Court reviews an adjudication to determine whether the judgment is supported by clear and convincing evidence, we must

determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of proof. *In Re: Christian,* 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, citations omitted.

{¶17} Dependency is defined by R.C. 2151.04. It states in pertinent part,

As used in this chapter, "dependent child" means any child:

(C) Whose condition or environment is such as to warrant the state, in the

interests of the child, in assuming the child's guardianship;..

{¶18} The focus of a charge that a child is dependent under R.C. 2151.04(C) is on the child and his condition and not on the faults of the parents. *In re G. McC.*, *supra* at ¶ 32 quoting *In re Bishop,* 36 Ohio App.3d 123, 521 N.E.2d 838 (5th Dist.1987); *In re: Bibb,* 70 Ohio App.2d 117, 435 N.E.2d 96 (1st Dist.1980); *In re Riddle,* 79 Ohio St.3d 259, 680 N.E.2d 1227 (1977). However, a court may consider a parent's conduct insofar as it forms part of the child's environment. *In re D.M.*, 5th Dist. Stark No. 2013CA00225, 2014-Ohio-2160, ¶ 23 citing *In re Alexander C.,* 164 Ohio App.3d 540, 2005–Ohio–6134, 843 N.E.2d 211 (6th Dist.). Further, in issues of dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." *In re Burchfield,* 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist.1988).

{¶19} Before the trial court and on appeal, Father contends the evidence does not support a dependency finding under R.C. 2151.04(C). Father cites to *In re Riddle*, 79 Ohio St.3d 259, 262, 1997-Ohio-391, 680 N.E.2d 1227, wherein the Ohio Supreme Court recognized that "a child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child under R.C. 2151.04(A)." *Riddle*

addressed dependency under R.C. 2151.04(A), but "the principle that a child is not 'dependent' if she is receiving adequate care from an alternate caregiver has been extended to cases arising under R.C. 2151.04(C)." *In re S.A.*, 2012-Ohio-3394, 974 N.E.2d 1261, ¶ 29 (2nd Dist.).

{¶20} The first issue is whether Father initiated the arrangement for Maternal Grandmother to care for R.C. The trial court considered Father's arguments under *Riddle* but found the case was not applicable to the facts presented. The trial court stated, "*Riddle* does not really apply, basically for the reason that [attorney for RCCS] has stated. The safety plan didn't result solely from the desire of the parents. It resulted from the parents' decision once there was an intervention by Children Services." (Tr. 95). The evidence shows Mother and Father initially placed R.C. with Maternal Grandmother in June 2015. In September 2015, RCCS investigated a second referral and found R.C. in his parents' care. RCCS contacted Maternal Grandmother to pick up R.C. After RCCS's intervention, RCCS brokered a safety plan agreement with parents and Maternal Grandmother.

{¶21} Father argues on appeal that while he may not have initiated the placement of R.C. with Maternal Grandmother, he is complying with the safety plan brokered by RCCS and R.C. is safe with Maternal Grandmother. Father states under these circumstances, the child cannot be adjudged dependent pursuant to *Riddle*. The Ohio Supreme Court stated in *Riddle*:

> The [Fifth District Court of Appeals] below in its opinion stated, "Just because a child is safe, whether it be in a foster home or the grandparents' home, does not negate a finding the child is neglected because of the acts or omissions of the parents." Given the facts of this case, we do not disagree

with the appropriateness of this observation. Similarly, we endorse the approach of *In re Poth* (June 30, 1982), Huron App. No. H–81–31, unreported, 1982 WL 9371, in which the Sixth Appellate District, in a situation where the county assumed care of a child because the parents were not providing care, rejected an argument that the child could not be adjudged dependent as a matter of law when the child was receiving excellent foster care.

*In re Riddle*, 79 Ohio St.3d 259, 264, 1997-Ohio-391, 680 N.E.2d 1227.

{¶22} The trial court summarized its findings as to dependency:

Even if *Riddle* did apply to this case, I have other concerns which bring me to the point where I have to find by clear and convincing evidence that dependency has been established. [Father], you have admitted to the use of various drugs and you have tested positive for Cocaine, one, two, three, four, five times in the last three months. That's recent history. And the other history I've heard is years long history of drug usage. * * * And [Maternal Grandmother], the care you have supplied for the child, I appreciate that. * * * I am delighted to find out that every observation we have had of [R.C.] indicates that he has been receiving good care, his needs are properly met. You have no legal authority over [R.C.] at this time. In fact, you don't even have the agreed safety plan that you had because you and your husband and [Father] decided that it was inappropriate to continue the involvement with [RCCS] back about six months ago. So this young man could take that child and walk out of your home anytime he wants to right now. * * * So,

with father having custody, with father living in the home with the child, it is only by his grace until I finish this hearing today that [R.C.] is remaining there. We have a mother incarcerated for drug issues. We have a father with no household of his own, with brand new employment, living with his in-laws by their grace. And thankfully, that appears to be going pretty well in several ways at this time. But based upon the history of drug usage, based upon the recent positive drug tests, and at least one-noncompliance with the rules of drug court, with the testimony that the father has not been regularly attending his counseling for what are some pretty serious drug issues, he Court does fund that uh [R.C.] is a dependent child.

(Tr. 94-96).

{¶23} Under R.C. 2151.04(C), a dependency finding is based on the child's condition or environment. The Second District Court of Appeals recognized that in considering the child's environment to determine dependency, the trial court may look prospectively. *In re S.A.*, 2012-Ohio-3394, ¶ 31. The court stated,

" 'The underlying reasoning * * * appears to be that as a dependency hearing focuses on the total environment, a court should look not only to the child's present condition but also to the child's potential future environment. * * * By focusing on the environment, which can be viewed and evaluated with or without the child, the legislature has chosen to permit the state to intercede in familial affairs at [an] early stage.' " *Id.* at *4, quoting *In the Matter of Likens,* 2d Dist. Greene No. 85–CA–80, 1986 WL 11910 (Oct. 24, 1986).

*Id.* at ¶ 31.

{¶24} Father and Mother have a history of substance abuse. Based on their substance abuse and while R.C. was in their care, R.C. was exposed to homelessness, inadequate supervision, food shortages, and inadequate medical care. Maternal Grandmother is currently meeting the obligations of care, support, and custody; however, Father could remove R.C. from Maternal Grandmother's care at any time. The trial court looked to R.C.'s past environment and potential future environment under Father's care and Father's continuing struggles with substance abuse to make a determination that a finding of dependency was warranted. We find there is clear and convincing evidence in the record to support the trial court's finding as to dependency.

{¶25} Father's sole Assignment of Error is overruled.

## CONCLUSION

{¶26} The judgment of the Richland County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, P.J.,

Hoffman, J. and

Wise, Earle, J., concur.